**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

| | | |
|---|---|---|
| **SUZANNE GIBSON and** | ) | |
| **RALPH GIBSON,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 11-2173-STA** |
| | ) | |
| **MORTGAGE ELECTRONIC** | ) | |
| **REGISTRATION SYSTEMS, INC.;** | ) | |
| **GMAC MORTGAGE LLC OF TN;** | ) | |
| **RESIDENTIAL FUNDING** | ) | |
| **CORPORATION; RESIDENTIAL** | ) | |
| **FUNDING COMPANY LLC;** | | |
| **McCURDY & CANDLER, LLC;** | ) | |
| **PATRICK TAGGART; MCC TN LCC;** | ) | |
| **LARRY JOHNSON; and** | ) | |
| **JOHNSON & FREEDMAN LLC** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

### ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

---

Before the Court is Defendants McCurdy & Candler LLC, Patrick Taggart, and MCC TN LLC's Motion for Judgment on the Pleadings (D.E. # 5) filed on March 11, 2011. Plaintiffs Ralph and Suzanne Gibson filed a response in opposition on April 11, 2011, and Defendants filed their reply on April 14, 2011. For the reasons set forth below, the Motion is **GRANTED**.

### BACKGROUND

Plaintiffs filed their Complaint on February 8, 2011 in Shelby County Chancery Court, seeking injunctive relief as well as damages flowing from the foreclosure sale of their home.

1

Plaintiffs allege that Defendants conducted an illegal foreclosure sale of their home using an invalid deed of trust.  On February 8, 2011, the Chancery Court entered a temporary restraining order enjoining Defendants from pursuing a forcible entry and detainer action against Plaintiffs. On February 22, 2011, the restraining order was extended, and the state court set an injunction hearing for April 4.  On March 7, 2011, Defendants removed the case from the Chancery Court to the United States District Court for the Western District of Tennessee by consent of all parties.

According to the Complaint, Plaintiffs purchased the subject property in 2003 for $450,000, which was financed in part by a $360,000 mortgage through National Bank of Commerce ("NBC").  (Compl. ¶ 11, 12.)  NBC subsequently assigned the Deed of Trust to Defendant Residential Funding Corporation ("RFC").  (*Id.* ¶ 13.)  The Complaint alleges that RFC's Vice-President Judy Faber indorsed the note "in blank" (meaning that the note was not restricted to a particular indorsee and therefore payable to the bearer) and registered the loan in the Mortgage Electronic Registration System ("MERS"). (*Id.* ¶ 14.)  The note was then sold to Fannie Mae and securitized in a trust and later sold to an investor. (*Id.* ¶ 15.)  Plaintiffs alleged that because no subsequent purchaser was identified when Judy Faber indorsed the note "in blank," there exists no agency relationship between RFC and the subsequent purchaser, and thus the deed of trust is rendered null. (*Id.* ¶ 16.)  Soon after, Plaintiffs received notice from Homecomings Financial, LLC ("Homecomings") that they were to make their payments to Homecomings. (*Id.* ¶ 18.)   Plaintiffs, however, were not informed what entity held the note. (*Id.*)

In 2007, Plaintiffs defaulted on their payments and were referred to an Atlanta firm,

which represented MERS in foreclosure proceedings. (*Id.* ¶ 19.)[1]  The Atlanta firm sent Plaintiffs

a letter dated April 12, 2007, stating that a foreclosure sale was scheduled for May 10, 2007, and

included a copy of a Notice of Substitute Trustee's Sale. (*Id.* ¶ 20.)  There is no record in the

Shelby County Register of Deeds of an assignment of the property from RFC to MERS.  (*Id.* ¶

21.)  The May 2007 foreclosure was cancelled when Plaintiffs brought their payments current by

paying a reinstatement amount of $18,206 (five missed payments, late fees and attorney's fees) to

Homecomings on May 15, 2007. (*Id.* ¶ 22.)  Plaintiffs resumed their monthly payments of $3,208

in June 2007.  (*Id.* ¶ 24.)

Plaintiffs then received a statement on July 18, 2007 assessing a deficiency of more than

$8,000 which included a $3,000 "recent delinquency fee" and other fees incurred after the May

15 reinstatement. (*Id.*)  Plaintiffs disputed these fees and sent Homecomings a letter to that effect

on August 22, 2007. (*Id.* ¶ 25.)  Plaintiffs claim they were assured that no further collection

would occur until an audit was completed but never heard from the Audit Department.  *Id.*

Homecomings continued to assess fees to Plaintiff's account, totaling $15,000 by June 2008.  (*Id.*

¶ 26, 27.)

On November 10, 2008, Plaintiffs addressed a Qualified Written Request ("QWR") to

Patrick Taggart, an attorney at McCurdy & Candler, LLC, a firm representing Homecomings in

foreclosure proceedings. (*Id.* ¶ 28.)  Plaintiffs allege that Taggart's response in a November 24,

---

[1] Plaintiffs have attached to their pleadings a copy of the letter, marked as exhibit B.  Pursuant to
Fed. R. Civ. P. 10(c), "a copy of a written instrument that is an exhibit to a pleading is a part of
the pleading for all purposes."  Therefore, the Court may consider this document as part of the
pleadings.  The Court finds that the letterhead reads Morris, Schneider, & Prior, L.L.C.  The
letter is signed by Robin Walker.  Neither Morris, Schneider & Prior, L.L.C. nor Robin Walker is
a named Defendant in this case.

2008 letter was deficient under the Real Estate Settlement Procedures Act ("RESPA").  (*Id.* ¶ 28, 29.)  Meanwhile, Plaintiffs agreed to loan modifications with Homecomings, which ceased to exist sometime in 2009. (*Id.* ¶¶ 30,31.)  At that time GMAC Mortgage LLC of Tennessee ("GMAC") took over as loan servicer on Plaintiffs' mortgage. (*Id.*)  Throughout 2010, GMAC unjustifiably rejected multiple requests from Plaintiffs for loan modification under the Federal Making Homes Affordable ("FMHA") program.  (*Id.* ¶¶ 33, 34.)  Plaintiffs allege that when they contacted GMAC on December 6, 2010, they were informed for the first time that GMAC had scheduled a foreclosure sale of Plaintiff's home for December 9, 2010.  (*Id.* ¶ 35.)  Not having received proper notice of the foreclosure sale, Plaintiffs claim that GMAC violated the notice requirements set forth in Tenn. Code Ann. § 35-5-101. (*Id.*)  Plaintiffs allege that on December 7, 2010, they were assured that the foreclosure sale was cancelled and a decision regarding loan modification would be made within thirty days.  (*Id.* ¶ 36.)

Notwithstanding this assurance, Residential Funding Company, LLC ("RFCLLC"), formerly known as Residential Funding Corporation ("RFC"), conducted a private foreclosure sale on December 9, 2010, and, according to a Substitute Trustee's Deed, purchased the property in question for $241,000. (*Id.* ¶ 37.)  Plaintiffs only learned of the sale upon receipt of a letter from Johnson & Freedman, LLC threatening to bring a forcible entry and detainer action on behalf of RFCLLC.  (*Id.* ¶ 38.)  Upon searching the Shelby Country Registry of Deeds website, Plaintiffs learned that RFCLLC had transferred a Substitute Trustee's Deed to Defendant MCC TN, LCC ("MCC"), in order to conduct the December 9 foreclosure sale. (*Id.* ¶ 39.)  According to Plaintiffs, neither MCC nor RFCLLC held a valid deed to the property, as the only assignment recorded had been from NBC to RFC, which then indorsed "in blank" any interest it had in the

4

promissory note.  *Id.*  Johnson & Freedman LLC then filed the forcible entry and detainer action to evict Plaintiffs from the property.  (*Id.* ¶ 41.)

In their Complaint, Plaintiffs allege the following claims: (1) Defendants, lacking authority to foreclose due to an improperly assigned Deed of Trust, conducted an illegal foreclosure sale of Plaintiff's home (*Id.* ¶¶ 43–46); (2) after RFC indorsed the note in blank, no Defendant in this action held the note and thus, they fraudulently or wrongfully foreclosed on the property (*Id.* ¶¶ 47–52); (3) Defendants failed to adequately respond to Plaintiffs qualified written request pursuant to RESPA and are liable for damages for those violations arising out of the premature foreclosure sale (*Id.* ¶¶ 53–58); (4) Defendants engaged in unfair practices that are likely to deceive, constituting fraudulent business practices in violation of the Tennessee Consumer Protection Act ("TCPA") (*Id.* ¶¶ 59–66); (5) Defendants violated the Fair Debt Collections Practices Act ("FDCPA") by wrongfully foreclosing on Plaintiffs' property and taking other improper collection actions (*Id.* ¶¶ 67–69); (6) Defendants, none of whom was ever assigned the Deed of Trust, wrongfully recorded documents showing them as owners of the subject property and thus slandered Plaintiffs' title (*Id.* ¶¶ 70–77); (7) Defendants are guilty of conversion for foreclosing on the property without the legal authority to do so (*Id.* ¶¶ 78–80); and (8) Defendants, in failing to provide proper notice of the foreclosure sale and purchasing the property for the "unconscionably low amount" of $241,000 (approximately half of the Plaintiffs' purchase price in 2003), violated the requirements of Tenn. Code Ann. § 35-5-101 (*Id.* ¶¶ 81–86).  Plaintiffs have prayed that the Court to set aside the foreclosure sale declaring the Substitute Trustee's Deed void, refund all payments made by Plaintiffs to the Defendants, and award Plaintiffs compensatory and punitive damages as well as attorney's fees and expenses.

(*Id.* 18).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) states, "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."[2]  Motions for judgment on the pleadings may be granted where the moving party "is entitled to judgment as a matter of law."[3]  Just as with Rule 12(b)(6) motions, the Court must consider a Rule 12(c) motion by taking all the "well-pleaded material allegations of the pleadings of the opposing party" as true.[4]  A pleading's factual allegations must be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead "sufficient factual matter" to render the legal claim plausible, i.e., more than merely possible.[5]  However, "a legal conclusion couched as a factual allegation" need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient.[6]  Thus, although the factual allegations in a pleading need not be detailed, they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief."[7]

---

[2] Fed. R. Civ. P. 12(c).

[3] *Cincinnati Ins. Co. v. Beazer Homes Invs., LLC*, 594 F.3d 441, 444 (6th Cir. 2010).

[4] *Id*.

[5] *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009)).

[6] *Hensley Mfg. v. ProPride, Inc.,* 579 F.3d 603, 609 (6th Cir.2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007));

[7] *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly,* 127 S.Ct. at 1964-65).

## ANALYSIS

The Court holds that Defendants McCurdy & Candler, Patrick Taggart, and MCC are entitled to judgment as a matter of law.  As a threshold issue, the Complaint totals seventeen pages and eight-six (86) numbered paragraphs and yet contains little or no factual allegations in support of any claim against these Defendants.  The only factual allegations in Plaintiffs' Complaint concerning Defendants McCurdy & Candler, Patrick Taggart, and MCC are as follows: on November 10, 2008, Plaintiffs addressed a qualified written request to Taggart, who is an attorney at McCurdy & Candler, the firm that represented Homecomings in foreclosure proceedings. (*Id.* ¶ 28.)  The Complaint further alleges that Taggart provided a deficient response to Plaintiffs' QWR in violation of RESPA. (*Id.* ¶ 28, 29.)  Finally, Plaintiffs claim that RFCLLC transferred a Substitute Trustee's Deed to MCC, in order to conduct the December 9 foreclosure sale, even though neither MCC nor RFCLLC held a valid deed to the property. (*Id.* ¶ 39.)  These Defendants have denied these allegations and assert that they are not necessary parties to the dispute. (Answer ¶ 4.)  Plaintiffs have simply alleged without specificity that all Defendants are liable for the conduct described in the Complaint.  In the absence of plausible allegations showing Plaintiffs' entitlement to relief from these Defendants, Defendants' Motion is **GRANTED**.  The Court will now analyze each of Plaintiffs' cause of action in turn.

## I.      Real Estate Settlement Procedures Act

Under the Real Estate Settlement Procedures Act ("RESPA"), a borrower may request information regarding his federally related mortgage loan from the loan servicer through written

7

correspondence.[8]  Upon receipt of such a qualified written request ("QWR"), the loan servicer

has twenty days to acknowledge receipt and sixty days to take corrective action.[9]  However, the

duty to respond to these QWRs applies only to loan servicers, which the statute defines as a

"person responsible for servicing of a loan (including the person who makes or holds a loan if

such person also services the loan)."[10]  "Servicing" in turn includes

> [R]eceiving any scheduled periodic payments from a borrower pursuant to the terms of
> any loan, including amounts for escrow accounts . . . and making the payments of
> principal and interest and such other payments with respect to the amounts received from
> the borrower as may be required pursuant to the terms of the loan.[11]

Therefore, only "servicers" of a loan are duty-bound by RESPA to respond to QWRs.[12]

Failure to plead that a defendant is in fact a loan servicer will defeat the plaintiff's cause of

action under RESPA, as it has not been established that the defendants' liability is plausible

under the *Twombly* standard.[13]  A claim for liability based on a defendant law firm's failure to

respond to a QWR fails as a matter of law because "RESPA does not provide for such a claim

---

[8] 12 U.S.C. § 2605(e)(1) (1996).

[9] § 2605(e)(1)–(2).

[10] § 2605(i)(2).

[11] § 2605(i)(3).

[12] § 2605(e)

[13] *Santos v. U.S. Bank N.A.*, 716 F. Supp. 2d 970, 979 (E.D. Cal. 2010).

8

against foreclosure counsel or its employees."[14]  Accordingly, a RESPA claim against a defendant law firm for violating QWR requirements warrants dismissal. [15]

In their Complaint, Plaintiffs claim that Defendant Patrick Taggart failed to adequately respond to the QWR sent by plaintiffs.  However, Plaintiffs failed to allege that McCurdy & Candler, Taggart, or MCC were loan "servicers" under RESPA.  Accordingly, those defendants had no duty to respond to plaintiffs' QWR and a claim based on such violations cannot be sustained.  In their response to Defendants' Motion, Plaintiffs contend that Defendants had a vicarious duty to comply with RESPA because they knew of their client's refusal to respond to the QWR.  However, RESPA makes clear that only loan "servicers" have a duty to timely respond to QWRs.[16]  Therefore parties who are not loan servicers, including foreclosure counsel, are not liable under RESPA, whether or not they have knowledge of their clients' violations.  Therefore, the Court holds that the moving Defendants are entitled to judgment as a matter of law on the RESPA claim.

## II.    Tennessee Consumer Protection Act

The Tennessee Consumer Protection Act ("TCPA") provides a right of action for any person who suffers ascertainable loss as a result of the unfair or deceptive act or practice of another.[17]  However, this Court and others applying Tennessee law have held that "the TCPA

---

[14] *Jackman v. Hasty*, 2011 WL 854878, at *4 (N.D. Ga. 2011).

[15] *Id.*

[16] § 2605(e)

[17] Tenn. Code Ann. § 47-18-109(a)

does not provide a cause of action for the conduct of a foreclosure."[18]  Plaintiffs allege that Defendants in this case violated the TCPA when they represented another party in the foreclosure of Plaintiffs' residence.  The Court holds that Defendants are entitled to judgment as a matter of law on such a claim.  In their response to this Motion, Plaintiffs claim that Defendants "[a]cted in concert to adversely affect Plaintiffs' rights in violation of [TCPA]."  However, Plaintiffs cite no case law that would support their proposition that foreclosure counsel can be liable under the TCPA, when acting in concert or otherwise.  Therefore, Plaintiffs' TCPA claim against the moving Defendants fails as a matter of law.

## III.    Fair Debt Collection Practices Act

The Fair Debt Collection Practices Act ("FDCPA") prohibits abusive debt collection practices by "debt collectors."[19]  The United States Supreme Court has held that the FDCPA applies to lawyers who regularly engage in consumer debt-collection through litigation.[20]  The Sixth Circuit, however, has held that law firms initiating non-judicial foreclosures are not "debt collectors" within the meaning of the FDCPA.[21]  Rather, such law firms are subject only to §

---

[18] *Simms v. CIT Group Consumer Fin.*, 2009 WL 973011, at *9 (W.D. Tenn. 2009).  *See also Hunter v. Washington Mut. Bank*, 2008 WL 4306604 (E.D. Tenn. 2008)  *Schmidt v. Nat'l City Corp.*, 2008 WL 5248706, at *8 (E.D. Tenn. 2008).

[19] 15 U.S.C. § 1692.

[20] *Heintz v. Jenkins*, 514 U.S. 291, 299, 115 S. Ct. 1489, 1493 (1995).

[21] *Montgomery v. Huntington Bank*, 346 F.3d 693, 700–701 (6th Cir. 2003); *Stamper v. Wilson & Assocs., PLLC*, 2010 WL 1408585, at *1 (E.D. Tenn. 2010).  In the case at bar, Defendants contend that they are not "debt collectors" as the FDCPA defines the term generally and that Plaintiffs have failed to allege in their Complaint that Defendants are "debt collectors." Nevertheless, attached to Defendants' Answer is a "Notice of Foreclosure Sale" sent to Plaintiffs by Defendant Taggart under Defendant McCurdy & Candler's letterhead.  Answer, ex. B.  The

1692f(6), the FDCPA's section relating to the enforcement of security interests.[22]  That section makes it unlawful for a "debt collector" to

> [t]ak[e] or threaten[] to take any nonjudicial action to effect dispossession or disablement of property if (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement.[23]

Plaintiffs have alleged that the moving Defendants were acting as "debt collectors" for the purpose of enforcing a security interest.  Therefore, the Court assumes for purposes of this Motion that Defendants are "debt collectors" only for purposes of § 1692f(6).

Among other things, § 1692f(6) prohibits non-judicial action to effect dispossession of property where there is not a present right to possession of the property claimed as collateral through an enforceable security interest.  Plaintiffs allege that the foreclosure sale of their property was illegal because the trustee's deed was invalid.  However, Plaintiffs' Complaint fails to allege that the moving Defendants knew or should have known that GMAC had no present

---

letter contains the following disclaimer: "This law firm is acting as a debt collector and is attempting to collect a debt and any information obtained will be used for that purpose."  Other courts have held that similar disclaimers are not dispositive of whether a law firm is a debt collector.  Rather, in determining whether a party is a debt collector, the factual inquiry is on "the principal purpose of the defendant's business and/or the defendant's regular activities."  *Stamper*, 2010 WL 1408585, at *8; *Hunter v. Washington Mut. Bank*, 2010 WL 2507038, at *4–5 (E.D. Tenn. 2010).  Because Plaintiffs have not even alleged that the moving Defendants are "debt collectors" in any sense other than Defendants were enforcing a security interest, the Court need not determine whether "the principal purpose of the defendant's business" was debt collection.

[22] *Montgomery*, 346 F.3d at 700–701.

[23] 15 U.S.C. § 1692f(6).

right to enforce its security interest.[24]  Without additional factual support for this element of Plaintiffs' FDCPA claim, the moving Defendants are entitled to judgment as a matter of law.

**IV.     Failure to Comply with Statutory Foreclosure Procedures**

Tenn. Code Ann. § 35-5-101 *et seq.* sets out procedures and minimum standards for conduct surrounding the foreclosure and sale of deeds of trusts, mortgages, and other liens securing payment.[25]  Even so, the Code states that a failure to satisfy the statutory requirements of the Code does not render a sale void or voidable.[26]  For example, a failure to comply with the advertisement and notice provisions in the statute does not render a sale void or voidable.[27]  In this case, Plaintiffs seek rescission of the foreclosure sale because the moving Defendants failed to comply with notice and advertisement provisions.  However, even taking Plaintiffs' allegations as true, Tennessee law is clear that a failure to comply with the statute does not make the foreclosure sale void or voidable.  As such, the moving Defendants are entitled to judgment as a matter of law on this claim.

**V.     Conversion and Slander of Title Claim**

To prevail on a slander of title claim, a plaintiff must prove the following elements: (1) that the plaintiff has an interest in the property, (2) that the defendant published false statements about the title to the property, (3) that the defendant was acting maliciously, and (4) that the false

---

[24] *See Wilson v. GMAC Fin. Servs. Corp.*, 2007 WL 951656, at *4 (E.D. Tenn. 2007).

[25] Tenn. Code. Ann. § 35-5-101, *et seq.*

[26] § 35-5-106; *Clark v. Standefer*, 147 S.W.2d 764, 767 (Tenn. Ct. App. 1940).

[27] *Conway v. E. Sav. Bank, FSB*, 2006 WL 3613605, at *6 (Tenn. Ct. App. 2006).

statements proximately caused the plaintiff a pecuniary loss.[28]  The malice requirement means that good faith, but nevertheless erroneous, claims of title do not give rise to a cause of action for slander or libel of title.[29]  Thus, malice or reckless disregard is required to state a claim for slander.  With regard to conversion, a plaintiff must establish a prima facie case by showing that a party appropriated property to his own use and benefit by intentionally exercising dominion over it in defiance of the plaintiff's rights. [30]

Accepting the few factual allegations Plaintiffs make against the moving Defendants as true, Plaintiff has not established a claim for conversion or slander of title against these Defendants.  Plaintiffs allege generally that all Defendants are guilty of conversion and slander of title in conducting the foreclosure sale of their residence using an invalid deed of trust.  Plaintiffs fail to allege, however, that the moving Defendants, or any other named Defendant, published false statements about the Plaintiffs' property with malice or reckless disregard.[31]  Likewise, Plaintiffs state insufficient facts to form the basis for a claim of conversion.  There is no allegation that the moving Defendants appropriated Plaintiffs' personal residence for their own use and benefit.  Therefore, the moving Defendants are entitled to judgment as a matter of law.

## VI.    Void Deed of Trust and Illegal Foreclosure Sale

---

[28] *Brooks v. Lambert*, 15 S.W.3d 482, 484 (Tenn. Ct. App. 1999).

[29] *Id.*

[30] *Kinnard v. Shoney's, Inc.*, 100 F. Supp. 2d 781, 797 (M.D. Tenn. 2000); *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977).

[31] Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.")

The basis for much of Plaintiffs's suit is their allegation that the deed of trust used to foreclose their residence was void.  However, the Court holds that the Complaint fails to allege that the moving Defendants knew or had reason to know that the deed was void and the foreclosure sale was improper.  Apart from their response brief's broad assertion that "MCC was well aware of GMAC's mortgage document fraud issues nationally," Plaintiffs have not alleged in their pleadings that the moving Defendants had knowledge of any defect of the deed of trust at issue in this case.[32]  Therefore, the Court holds that the moving Defendant's are entitled to judgment as a matter of law on this claim.

<u>CONCLUSION</u>

The Court holds that Plaintiffs have failed to plead plausible facts to show their entitled to relief against Defendants McCurdy & Candler, Patrick Taggert, and MCC.  Plaintiffs' Complaint is devoid of factual matter that would go to support any of their claims against these Defendants.  Therefore, Defendants' Motion for Judgment on the Pleadings is **GRANTED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: August 16, 2011.

---

[32] Pl.'s Resp. at 3.

14