**IN THE UNITED STATES DISTRICT COURT**
**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **SUZANNE GIBSON and** | ) | |
| **RALPH GIBSON,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 11-2173-STA** |
| | ) | |
| **MORTGAGE ELECTRONIC** | ) | |
| **REGISTRATION SYSTEMS, INC.;** | ) | |
| **GMAC MORTGAGE LLC OF TN;** | ) | |
| **RESIDENTIAL FUNDING** | ) | |
| **CORPORATION; RESIDENTIAL** | ) | |
| **FUNDING COMPANY LLC;** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER GRANTING IN PART, DENYING IN PART PLAINTIFF'S MOTION FOR
LEAVE TO FILE AMENDED COMPLAINT
ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS
AS MOOT**

Before the Court is Plaintiffs Suzanne Gibson and Ralph Gibson's Motion for Leave to File

Amended Complaint (D.E. # 21) filed on March 6, 2012. Defendants have responded in opposition

to Plaintiffs' Motion, and Plaintiffs have filed a reply brief. For the reasons set forth below, the

Motion is **GRANTED IN PART, DENIED IN PART**.

Also before the Court is Defendants Mortgage Electronic Registration Systems, Inc.; GMAC

Mortgage LLC ("GMAC"); and Residential Funding Company, LLC f/k/a Residential Funding

Corporation's Motion for Judgment on the Pleadings (D.E. # 13) filed on November 15, 2011. For

1

the reasons set forth below, Defendants' Motion is **DENIED** as moot and without prejudice to re-file.

**BACKGROUND**

**I. Procedural Background**

Plaintiffs filed their initial complaint on February 8, 2011, in Shelby County Chancery Court, seeking injunctive relief as well as damages from the foreclosure sale of their home. Plaintiffs allege that Defendants lacked authority to foreclose due to an improperly assigned Deed of Trust and therefore the foreclosure sale of their home was illegal. Plaintiffs allege that after Defendant Residential Funding Corporation ("RFC") indorsed the note in blank, no Defendant in this action held the note and thus, they fraudulently or wrongfully foreclosed on the property. (*Id.* ¶¶ 47–52.) On February 8, 2011, the Chancery Court entered a temporary restraining order enjoining Defendants from pursuing a forcible entry and detainer action against Plaintiffs. On February 22, 2011, the restraining order was extended, and the state court set an injunction hearing for April 4. On March 7, 2011, Defendants removed the case from the Chancery Court to the United States District Court for the Western District of Tennessee by consent of all parties.

On August 16, 2011, the Court granted a motion for judgment on the pleadings filed by Defendants McCurdy & Candler LLC, Patrick Taggart, and MCC TN LLC (D.E. # 12). The Court held that Plaintiffs' complaint lacked any factual matter that would support their claims against those Defendants. On November 15, 2011, the remaining Defendants filed their own motion for judgment on the pleadings (D.E. # 13), which remains pending before the Court. In response to Defendants' motion, Plaintiffs filed a motion for discovery, seeking expedited discovery Plaintiffs needed to respond to the remaining Defendants' Rule 12(c) motion. On February 15, 2012, the Court denied

the motion for discovery and ordered Plaintiffs to respond to the motion for judgment on the pleadings and/or file a motion to amend their complaint (D.E. # 17).

## II. Motion for Leave to File Amended Complaint

On March 6, 2012, Plaintiffs filed the instant Motion to for Leave to File Amended Complaint. Plaintiffs file a short brief in support of their Motion and attached a copy of their proposed amended complaint. Upon review, the proposed amended complaint alleges the following causes of action against the remaining Defendants: (1) quiet title pursuant to Tenn. Code Ann. § 29-29-101 (Count I); (2) wrongful foreclosure on the grounds that none of the Defendants were lawfully appointed as trustee or assignee of the Deed of Trust (Count II); (3) violation of the Real Estate Settlement Procedures Act ("RESPA") (Count III); (4) slander to title (Count IV); (5) conversion (Count V); (6) breaches of the notice requirements set forth in the Deed of Trust (Count VI); and (7) promissory estoppel based on allegations that Defendant GMAC had promised Plaintiffs the foreclosure sale would not take place as scheduled for December 2010 (Count VII). Plaintiffs argue that they should be granted leave to amend because the proposed amended complaint clarifies their claims and narrows the issues presented. Plaintiffs contend that under Rule 15's liberal standard for amending the pleadings, the Court should permit Plaintiffs to amend.

Defendants have responded in opposition to Plaintiffs' Motion arguing that leave should be denied for undue delay as well as for the futility of the proposed amendment. Defendants argue that Plaintiffs should have sought leave to amend right after the Court first granted a motion for judgment on the pleadings as to some Defendants in August 2011. Now seven months later, the filing of the amended complaint will only serve to further delay the resolution of the case. Defendants also argue that each of the proposed amendments would be futile. Defendants contend that Plaintiff's claim

to quiet title would not survive a motion to dismiss because the Court has already held that a foreclosure sale is not void on account a failure to follow the statutory requirements for a foreclosure sale. Defendants next argue that Plaintiffs' allegation of improper notice based on the terms of the Deed of Trust fails. The Court has already held that Defendants complied with the statutory notice requirements. Any similar claim based on lack of notice would not survive a motion to dismiss. As for Plaintiffs' newly proposed claim for promissory estoppel, Defendants argue that the proposed amended complaint fails to plead detrimental reliance and on that basis would be subject to dismissal. Plaintiffs' re-cast claim for violations of RESPA would be futile because under the Act a loan servicer has no duty to respond to a qualified written request sent to outside counsel for the servicer. In the alternative, the RESPA claim is futile because the allegations of the proposed amended complaint show that the loan servicer, Homecomings (now Defendant GMAC), did in fact respond as RESPA requires, and the response satisfied Defendants' obligations under RESPA. For these reasons, Defendants argue that the Court should deny Plaintiffs leave to amend their complaint.

In their reply, Plaintiffs restate their theory that the Deed of Trust was converted to bearer paper when Defendant RFC indorsed the promissory note in blank and registered it with Defendant MERS. The Deed of Trust was never assigned to a subsequent purchaser and as a result "became a nullity." Pls.' Reply 4. As for the challenges raised in Defendants' response, Plaintiffs first maintain that the proposed amended complaint has alleged a violation of RESPA based on Defendant GMAC's failure to provide a proper response to Plaintiffs' qualified written request and the fact that GMAC's affiliate went forward with the foreclosure sale with the knowledge that GMAC had not properly responded. With respect to the claim to quiet title and for slander to title, Plaintiffs argue that the allegations are pleaded only as to Defendant Residential Funding Company,

LLC ("RFC, LLC").[1]  Plaintiffs contend that because of the defects in the indorsement and assignment of the note and the deed of trust, Defendant RFC, LLC had no interest in the note or the deed of trust.  By conducting the foreclosure sale without authority to do so, RFC, LLC is liable for quiet title and slander to title.  Finally, Plaintiffs argue that their claim for failure to give proper notice under the terms of the Deed of Trust are well-pleaded.  Specifically, Plaintiffs allege that even though the Deed of Trust required that notice of a foreclosure be mailed to Plaintiffs, Defendants never mailed Plaintiffs notice of the December 2010 foreclosure sale.  Based on the well-pleaded allegations of the proposed amended complaint, Plaintiffs argue that amendment would not be futile and so leave to amend should be granted.

## ANALYSIS

A pleading may be amended only "with the opposing party's written consent or by the court's leave."[2] Rule 15(a)(2) of the Federal Rules of Civil Procedure states that "[t]he court should freely give leave when justice so requires."[3] The Sixth Circuit has held that a motion to amend should be denied where the motion is "brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile."[4]  In this case, Defendants argue that Plaintiffs'

---

[1] Both RFC and the RFC, LLC are named Defendants in this matter.  The proposed amended complaint alleges that RFC is an inactive Delaware corporation and that RFC, LLC is a Delaware limited liability company with its principal place of business in Minneapolis, Minnesota.  Plaintiffs allege that Defendant RFC was the indorsee of the note and the assignee of the Deed of Trust on January 8, 2003.  Plaintiffs allege that Defendant RFC, LLC is the party that foreclosed on Plaintiffs' residence.

[2] Fed. R. Civ. P. 15(a)(2).

[3] *Id.*

[4] *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010) (citation omitted); *see also New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1052–1053 (6th Cir. 2011)

Motion should be denied on the basis of undue delay as well as the futility of the proposed amendments. The Court will consider each argument in turn.

## I. Undue Delay

Defendants first argue that Plaintiffs' Motion should be denied for Plaintiffs' undue delay in seeking leave to amend their pleadings. Among the reasons a court may deny a motion to amend the pleadings is the pleading party's undue delay in seeking leave to amend. However, "[d]elay by itself is not sufficient reason to deny a motion to amend."[5] Rather, the court must consider the delay in light of the "critical factors" of notice and substantial prejudice to the non-moving party as well as the stage of the litigation.[6] Here the Court finds that there is no evidence of undue delay in Plaintiffs' seeking leave to amend their pleadings. At roughly the same time this case was removed to this Court, several (but not all) Defendants filed a motion for judgment on the pleadings on March 10, 2011, which the Court granted on August 16, 2011. The remaining Defendants argue that any delay in Plaintiffs' seeking leave to amend should be measured from that date. However, Defendants did not file their own Rule 12(c) motion until November 15, 2011 (D.E. # 13). In response to that motion, Plaintiffs timely filed a motion of their own seeking discovery for the purpose of responding to the Rule 12(c) motion (D.E. # 15-1). Although Plaintiffs' motion for discovery lacked merit, the motion indicated for the first time that Plaintiffs also intended to file a motion to amend their pleadings. When the Court denied Plaintiffs' motion for discovery on February 15, 2012, the Court

_____

(quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

[5] *Wade v. Knoxville Util. Bd.*, 259 F.3d 452, 458 (6th Cir. 2001) (citation omitted); *see also Szoke v. United Parcel Serv. of Am., Inc.*, 398 F. App'x 145, 153 (6th Cir. 2010).

[6] *Wade*, 259 F.3d at 458–59 (citation omitted).

directed them to file their motion to amend within fourteen days, if they still intended to seek leave

to amend.  Plaintiffs filed the instant Motion on March 6, 2012.[7]  Based on the fact that this case has

not proceeded beyond the pleadings stage and Plaintiffs only sought leave to amend in response to

Defendants' Rule 12(c) motion, it cannot be said that Plaintiffs have acted with undue delay in filing

their Motion to Amend.  Therefore, the Court rejects Defendants' argument on this point.

## II. Futility of Amendment

Defendants also argue that several of Plaintiffs' proposed amendments would not survive a

Rule 12(b)(6) motion, and as such the Court should hold that amendment is futile.  It is well-settled

that a "trial court may appropriately assess the legal sufficiency of a contemplated amendment in

considering the propriety of granting leave to amend under Fed. R. Civ. P. 15(a) and deny the motion

if amendment would be futile."[8]  A proposed amended pleading is futile if the amended pleading

would not withstand a motion to dismiss pursuant to Rule 12(b)(6).[9]  Defendants argue that all of

the proposed amended claims would be futile in this case.  The Court will analyze the merits of each

proposed amendment and determine whether the amendment actually states a claim upon which

relief may be granted.

## A.  Quiet Title

---

[7] Plaintiffs actually filed their initial motion to amend on February 29, 2012, as the Court had required in its February 15 order.  Plaintiffs' first motion was denied for failure to actually confer with opposing counsel about the relief sought in the motion.  Plaintiffs re-filed their motion with an appropriate certificate of consultation on March 6, 2012.

[8] *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 519 (6th Cir. 2001) (citing *Foman*, 371 U.S. at 182).

[9] *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (citation omitted).

Defendants first argue that Plaintiffs' proposed amendment of Count I would be futile and so the Court should deny Plaintiffs' leave to amend. Count I of the proposed amended complaint alleges that Defendant RFC, LLC lacked the legal authority to foreclose on Plaintiffs' residence because RFC, LLC was not an owner and holder in due course of the promissory note and was never the assignee of a beneficial interest in the Deed of Trust. The proposed amended complaint further alleges that RFC, LLC had no authority to foreclose because the Deed of Trust had become a nullity when it was not assigned to the subsequent purchaser of the note. Based on these allegations, Plaintiffs request that the Court quiet title to their residence by finding that the foreclosure sale was legally void. For the reasons that follow, the Court holds that these allegations could not withstand a motion to dismiss, and as such amending the complaint to add these pleadings would be futile. Therefore, Plaintiffs' Motion is **DENIED** as to these claims.

Under Tennessee law, "the lien of a mortgage or trust deed passes, without a special assignment thereof, to the endorsee of a note or transferee of the debt secured by the instrument."[10] The Middle District of Tennessee recently applied this rule of commercial paper and rejected a theory identical to the one Plaintiffs in the case at bar offer in support of their quiet title claim, namely, that "the deed of trust is defective because it was split or severed from the note. . . ."[11] Plaintiffs allege that the Deed of Trust became nullity because subsequent holders of the note did

---

[10] *W.C. Early Co. v. Williams*, 186 S.W. 102, 103–104 (Tenn. 1916) (explaining that "[t]he policy of the law is to treat the note as the principal thing and the mortgage as the incident . . . ."); *see also Samples v. Bank of Am., N.A.*, No. 3:12-CV-44, 2012 WL 1309135, at *4 (M.D. Tenn. Apr. 16, 2012) ("The transfer of the note, without more, carried with it the lien created by the deed of trust.") (quoting *Clark v. Jones*, 27 S.W. 1009 (Tenn. 1894)). *Accord Horvath v. Bank of New York, N.A.*, 641 F.3d 617, 623 (4th Cir. 2011) (applying Virginia law).

[11] *Samples*, 2012 WL 1309135, at *4.

not register the assignment of the Deed of Trust in the chain of title on Plaintiffs' property. Therefore, this Court concludes that Plaintiffs' argument that the Deed of Trust "is void because it was not assigned to the subsequent purchaser(s) of the Note" is without legal support and would not survive a Rule 12(b)(6) challenge. Under the circumstances, granting Plaintiffs leave to amend and add such a claim to their pleadings would be futile.

Likewise, Plaintiffs' contention that Defendant RFC, LLC did not have the legal authority to foreclose because it was not "owner and holder in due course of the Note" finds no support under Tennessee law. First, Plaintiffs' proposed amendment alleges no plausible facts to show that RFC, LLC was not a holder in due course of the note. It is undisputed in this case that the promissory note Plaintiffs signed is a negotiable instrument subject to Article 3 of Tennessee's version of the Uniform Commercial Code ("the UCC"). The Tennessee UCC defines a "holder in due course" as a person who takes a negotiable instrument such as the note Plaintiffs signed here (i) for value, (ii) in good faith, and (iii) without knowledge of any apparent defect in the instrument nor any advance notice of dishonor.[12] Insofaras the proposed amended complaint does not allege any facts to show that RFC, LLC or any other party was assigned the note without value, in bad faith, or with knowledge of any defects or notice of dishonor, Plaintiffs have not alleged sufficient facts to plead that RFC, LLC was not a holder in due course. On this basis alone, the proposed amendment has not plausibly pleaded that RFC, LLC was not a holder in due course.

Second, even if the proposed amendment had pleaded facts to show that RFC, LLC was not a holder in due course, Plaintiffs have cited no legal authority to show that a party must be a holder in due course in order to enforce a negotiable instrument. On the contrary, the UCC states that

---

[12] Tenn. Code Ann. § 47–3–302.

9

"[t]ransfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course."[13] Under the UCC, "[a]n instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument."[14] The allegation that RFC, LLC was not a holder in due course then does not necessarily defeat RFC, LLC's right to enforce the note, unless the proposed amendment contained additional, plausible facts showing that RFC, LLC had no other right to enforce the note.

Third, Plaintiffs have cited no legal authority for their allegation that RFC, LLC must be the owner of the note in order to enforce it.[15] The UCC provides that a "person entitled to enforce" an

---

[13] § 47–3–203(b); *see also id.*, comment 1 ("The right to enforce an instrument and ownership of the instrument are two different concepts.").

[14] § 47-3-203(a).

[15] Plaintiffs do argue that Defendant RFC, LLC must prove that it has a valid written assignment of the note or physical possession of the note in order to establish that RFC,LLC is a holder of the note. In support of this proposition, Plaintiffs cite two bankruptcy cases from other jurisdictions. The Court finds that Plaintiffs' reliance on these bankruptcy decisions is misplaced. The decision in *In re Agard*, 444 B.R 231, 246 (Bankr. E.D.N.Y. 2011) is unpersuasive because it involved the laws of the state of New York and because it was recently vacated on appeal. *Agard v. Select Portfolio Servicing, Inc.*, Nos. 11-CV-1826 & 11-CV-2366, 2012 WL 1043690 (E.D.N.Y. Mar. 28, 2012).

The other decision on which Plaintiffs rely is likewise inapposite. The issue presented in that case was whether a loan servicer was a "person entitled to enforce" a note and therefore had standing to file a proof of claim in a bankruptcy proceeding. *In re Veal*, 450 B.R. 897, 920 (B.A.P. 9th Cir. 2011). It is well-established that standing is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "Article III's standing requirements apply to proceedings in bankruptcy courts just as they do to proceedings in district courts." *In re Resource Tech. Corp.*, 624 F.3d 376, 382 (7th Cir.2010). While Plaintiffs have challenged RFC, LLC's legal right to foreclose, the legal right to act is a distinct concept from Article III standing to bring a case or controversy before a federal court. Also Plaintiffs bear the burden to allege plausible facts in support of their claim against RFC, LLC at the pleadings stage. RFC, LLC, on the other hand, has no duty to demonstrate its standing before this Court simply because RFC,

instrument is "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument" under other sections of the UCC, which do not appear to be relevant here.[16] A holder is defined to mean "a person who is in possession of an instrument . . . indorsed . . . in blank,"[17] and "a holder remains a holder although that person had made an assignment of a beneficial interest therein."[18] Most importantly, the UCC is clear that a person "is entitled to enforce the instrument even if the person is not the owner of the instrument or in wrongful possession."[19] Therefore, the Court concludes that Plaintiffs' allegations that RFC, LLC was "not an owner and holder in due course of the Note" would not *ipso facto* defeat RFC, LLC's right to enforce the instrument.[20]

In further support of their argument about the validity of the foreclosure and RFC, LLC's right to invoke the power of sale, Plaintiffs contend in their reply brief that RFC, LLC "must prove that it has possession of the original note."[21] However, Plaintiffs fail to address the terms of the note

---

LLC has not pleaded any claims and invoked the Court's jurisdiction to hear them. For these reasons, the legal authority Plaintiffs cite does not control.

[16] § 47–3–301.

[17] § 47–1–201.

[18] 1 Anderson U.C.C. § 1-201-257; *In re Martinez*, 455 B.R. 744, 763 (Bankr. D. Kan. 2011).

[19] *Id.*

[20] *Donaldson v. BAC Home Loans Servicing, L.P.*, 813 F. Supp. 2d 885, 894–96 (M.D. Tenn. 2011) (holding that party had right to enforce a promissory note and conduct foreclosure even though the note was not endorsed).

[21] Pls.' Reply 5 (D.E. # 26).

itself where Plaintiffs specifically waived the right of presentment.[22]  The relevant provision of the note defines "presentment" to mean the right to require "the Note Holder" to demand payment of amounts due.[23]  Tennessee's UCC defines "presentment" as "a demand made by or on behalf of a person entitled to enforce an instrument to pay the instrument made to the drawee or a party obliged to pay the instrument."[24]  Tennessee law also requires that "[u]pon the request of the person to whom presentment is made, the person making presentment must exhibit the instrument."[25]  However, the exhibition of the instrument is excused where "by the terms of the instrument presentment is not necessary to enforce the obligation of endorsers or the drawer" or "the drawer or endorsee whose obligation is being enforced has waived presentment or otherwise has no reason to expect or right to require that the instrument be paid or accepted."[26]  Construing these provisions of the UCC together with the terms of the note, the production of the note itself is not required in this case because Plaintiffs have waived the requirements of presentment.[27]

Based on the legal insufficiency of Plaintiffs' allegations about defects in the foreclosure, the Court concludes that Plaintiffs' claim to quiet title would be futile.  Therefore, Plaintiffs' Motion

---

[22] Pls.' Mot. for Leave to File Am. Compl., ex. A (D.E. # 21-1).  The Court can consider this exhibit to determine whether the proposed amendment would be futile because the Court would be able to consider the exhibit on a motion to dismiss.  *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

[23] *Id.* ¶ 9.  The note defines a "Note Holder" as "the Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note."  *Id.* ¶ 1.

[24] Tenn. Code Ann. § 47–3–501(a).

[25] § 47–3–501(b)(2).

[26] § 47–3–504(a).

[27] *Donaldson*, 813 F. Supp. 2d at 894.

is **DENIED** as to this claim.

**B. Lack of Notice of the Foreclosure Sale**

Next, Defendants argue that the Court should deny Plaintiffs leave to amend Count VI because the proposed amendment would be futile. Count VI of the proposed amended complaint alleges that even if Defendant RFC, LLC had a valid security interest in the Deed of Trust and was the owner and holder in due course of the note, RFC, LLC nevertheless failed to give Plaintiffs proper notice of the foreclosure sale under the notice terms of the Deed of Trust. According to the proposed amended complaint, paragraph 22 of the Deed of Trust required the trustee to give notice of the sale by public advertisement and also by mailing a copy of the notice to Plaintiffs. Paragraph 15 of the Deed of Trust required that notice be mailed to Plaintiffs at their "notice address," i.e. their residence. Plaintiffs allege that no Defendant mailed Plaintiffs a copy of the notice for the foreclosure sale that occurred on December 9, 2010. Based on the breach of the terms of the Deed of Trust, Plaintiffs ask the Court to set aside the foreclosure sale. The Court holds that these allegations would withstand a motion to dismiss, and as such amending the complaint to add these pleadings would not be futile. Therefore, Plaintiffs' Motion is **GRANTED** as to these claims.

Under Tennessee law, a foreclosure sale may be set aside where the trustee fails to comply with the notice requirements of the deed of trust.[28] Where "the terms are sufficiently clear and originate in the deed of trust, the law demands strict compliance for the conveyance to be valid."[29]

---

[28] *Federal Nat. Mortg. Ass'n v. Robilio*, W2007-01758-COA-R3-CV, 2008 WL 2502114, at *7 (Tenn. Ct. App. June 24, 2008) (citing *Henderson v. Galloway,* 27 Tenn. 692, 695-96 (Tenn. 1848)).

[29] *Robilio*, 2008 WL 2502114, at *7 (citing *Progressive Bldg. & Loan Ass'n v. McIntyre,* 89 S.W.2d 336, 336 (Tenn. 1936)).

Here Plaintiffs have alleged that Defendants did not mail Plaintiffs written notice of the December

2010 foreclosure sale as the Deed of Trust required.  The Deed of Trust at paragraph 22 states, "If

Lender invokes the power of sale, Trustee shall give notice of sale by public advertisement in the

county in which the Property is located for the time and in the manner provided by Applicable law,

and Lender or Trustee shall mail a copy of the notice of sale to Borrower in the manner provided"

elsewhere in the deed.[30]  Paragraph 15 of the Deed of Trust requires that "[a]ll notices given by

Borrower or Lender in connection with this Security Instrument must be in writing" and "[a]ny

notice to Borrower in connection with this Security Instrument shall be deemed to have been given

to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address

if sent by other means."[31]  The Court construes this paragraph to mean that publication of the notice

was to follow the statutory publication requirements while the mailed notice was governed by the

Deed of Trust itself.

Defendants argue that notice of the sale was published  by newspaper and that the Court has

already deemed copies of the publication to be part of the pleadings pursuant to Rule 12 and Rule

10(c) of the Federal Rules of Civil Procedure.  Even so, the Court finds nothing in the pleadings to

show that Defendants mailed notice of the December 9, 2010 foreclosure sale to Plaintiffs as the

Deed of Trust required.  The pleadings do include a letter mailed to Plaintiffs and dated August 20,

---

[30] Pls.' Mot. for Leave to File Am. Compl., ex. A Deed of Trust, 32, ¶ 22 (D.E. # 21-1).

[31] *Id.* at 30, ¶ 15.  In contrast, Tenn. Code Ann. § 35–5–101(e) requires that written notice
of a sale to foreclose a deed of trust must be sent "by registered or certified mail, return receipt
requested." Tenn. Code Ann. § 35–5–101(e).

2010, noticing a foreclosure sale on September 16, 2010.[32]  Among other things, the letter states, "Substitute Trustee reserves the right to adjourn the day of the sale to another day, time and place certain without publication, upon announcement at the time and place for the sale set above."[33] There is no indication in the pleadings that the substitute trustee actually gave such notice, and the pleadings further indicate that notice of the December 2010 sale was published in the Memphis Commercial Appeal.  While it is possible that the substitute trustee did exercise this right, the issue at the very least raises a question of fact, which the Court cannot resolve at the pleadings stage.  In short, the proposed amendment plausibly alleges that Defendants did not satisfy the Deed of Trust's notice requirements as to the December 9, 2010 foreclosure sale.  Therefore, the Court finds that the proposed amendment would not be futile, and Plaintiffs' Motion is **GRANTED** as to this count.

## C.  Promissory Estoppel

Defendants further argue that Plaintiffs' proposed claim for promissory estoppel would not withstand a Rule 12(b)(6) and thus is futile.  Count VII of the proposed amended complaint alleges that even if Defendant RFC, LLC had a valid security interest in the Deed of Trust and was the owner and holder in due course of the note, Defendant GMAC through its representatives informed Plaintiffs on December 6 and 7, 2010, that a foreclosure sale was set and that the sale would be cancelled due to the request for a loan modification Plaintiffs had submitted.  In point of fact, the proposed amended complaint actually alleges that on December 6, 2010, a "GMAC representative Plaintiffs spoke to assured Plaintiffs that the loan modification request would be reviewed to see if

_____

[32] Answer of Defs. McCurdy & Candler LLC, Patrick Taggart, and MCC TN LLC, ex. B (D.E. # 4-3).

[33] *Id.*

the foreclosure sale *could be* cancelled while the request for the loan modification was considered."[34] The pleadings go on to state that on December 7, 2010, "Plaintiffs contacted GMAC again and were assured that the foreclosure sale date had been cancelled and that a decision on the requested modification would be made within thirty days."[35] The proposed amendment alleges that Plaintiffs relied on this representation to their detriment as the foreclosure sale did occur on December 9, 2010. The proposed amended complaint pleads that Defendant GMAC and Defendant "Residential Funding" should be estopped from denying that the sale should be set aside. The Court holds that these allegations could withstand a motion to dismiss and as such amending the complaint to add these pleadings would not be futile. Therefore, Plaintiffs' Motion is **GRANTED** as to these claims.

The Tennessee Supreme Court has defined promissory estoppel as "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance."[36] The court has added that the promise "is binding if injustice can be avoided only by enforcement of the promise."[37] The court in *Alden* defined the following limits of the theory: "(1) the detriment suffered in reliance must be substantial in an economic sense; (2) the substantial loss to the promisee in acting in reliance must have been foreseeable by the promisor; (3) the promisee must have acted reasonably in justifiable

---

[34] Pls.' Mot. for Leave to File Am. Compl., ex. A, ¶ 30 (D.E. # 21-1) (emphasis added).

[35] *Id.* ¶ 31.

[36] *Alden v. Presley*, 637 S.W.2d 862, 864 (Tenn. 1982) (quoting Restatement of Contracts § 90).

[37] *Id.*

16

reliance on the promise as made."[38]   The doctrine of promissory estoppel is also known as "detrimental reliance" because the plaintiff must show that a promise was made and that the plaintiff reasonably relied on the promise to his detriment.[39]   Tennessee does not liberally apply the doctrine of promissory estoppel.   Rather, the doctrine is available only in exceptional cases where the circumstances border on actual fraud.[40]

Despite a number of defects in the pleading of this claim, the Court holds that Plaintiffs have stated a plausible claim for promissory estoppel.   First, it is not clear that Plaintiffs allege facts in support of this claim to show that theirs is the exceptional case where the conduct described borders on actual fraud.   The proposed amendment simply states that an unnamed GMAC representative stated to Plaintiffs that the foreclosure sale "could be cancelled" and on the following day GMAC informed Plaintiffs the sale would not occur.   Plaintiffs have pleaded no facts to show that Defendant GMAC acted with bad intent when the alleged promise was made.   Second, Defendants argue that the proposed amendment is futile because Plaintiffs have failed to allege any facts in support of their claim that they reasonably relied on the alleged representations about cancelling the foreclosure sale.[41]   Defendants contend that Plaintiffs have not pleaded facts to show that they could have undertaken acts to alter the outcome of the foreclosure, such as curing their default or outbidding the

---

[38] *Id.* (quoting Simpson, *Law of Contracts* § 61 (2d ed. 1965)).

[39] *Engenius Entm't, Inc. v. Herenton,* 971 S.W.2d 12, 19-20 (Tenn. Ct. App. 1997)

[40] *Baliles v. Cities Serv.*, 578 S.W.2d 621 (Tenn. 1979); *Shedd v. Gaylord Entm't Co.*, 118 S.W.3d 695, 700 (Tenn. Ct. App. 2003) (limiting the application to "exceptional cases where to enforce the statute of frauds would make it an instrument of hardship and oppression, verging on actual fraud").

[41] Defendants do not address whether the alleged representation violates Tennessee's statute of frauds.   Therefore, the Court does not reach that issue here.

highest bidder at the sale. It is true that Plaintiffs have not pleaded how the representation about delaying the foreclosure sale actually led to a "substantial change of position by the promisee in reliance on the promise . . . ."[42] Indeed, the proposed amendment is short on facts, and Plaintiffs have largely recited the formulaic elements of promissory estoppel. Plaintiffs respond in their brief that had they known the foreclosure would take place, they would have sought court intervention to enjoin it. Nevertheless, the pleadings show that a previously-noticed foreclosure sale did not take place and that Plaintiffs had sought a loan modification at least three times in 2010, including just before the December 9, 2010 foreclosure sale. The proposed amendment also alleges that as a result of the foreclosure, Defendant RFC, LLC filed a forcible entry and detainer action in state court to remove Plaintiffs from their home. Based on these additional fact pleadings, the Court finds that Plaintiffs have alleged, albeit narrowly, enough to survive a motion to dismiss. Therefore, the Court concludes that the proposed amendment would not be futile, and Plaintiffs' Motion is **GRANTED** as to this claim.

## D. Violations of RESPA

Defendants finally argue that Plaintiffs' proposed claim for violations of RESPA is futile because the claim would not withstand a Rule 12(b)(6) motion. Count III of the proposed amended complaint alleges that on November 10, 2008, Plaintiffs directed a qualified written request to Patrick Taggart, counsel for Homecomings (which is now GMAC). The proposed amendment states that Plaintiffs have never received a proper response from GMAC, only an unsigned response from Homecomings customer service dated November 24, 2008. Plaintiffs pray that the Court order

---

[42] *Alden*, 637 S.W.2d at 864.

GMAC to provide an explanation of Plaintiffs' loan and all of the charges accrued since its inception. The proposed amended complaint alleges that GMAC was required under RESPA to cease all collections efforts, including the foreclosure sale, until GMAC had complied with the Act. Accepting these allegations as true, the Court holds that Plaintiffs' proposed amendment fails to state a RESPA claim against GMAC and therefore finds the claim to be futile. As a result, Plaintiffs' Motion is **DENIED** as to this claim.

Under RESPA, a borrower may request information regarding his federally-related mortgage loan from the loan servicer through written correspondence.[43] A qualified written request ("QWR") is correspondence that

> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.[44]

Upon receipt of a QWR, the loan servicer has twenty days to acknowledge receipt and sixty days to make a full response to the QWR.[45] Specifically, RESPA imposes a duty on the loan servicer to investigate the borrower's account and provide the borrower with a written explanation or clarification containing the following information:

> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
> (ii) the name and telephone number of an individual employed by, or the office or

---

[43] 12 U.S.C. § 2605(e)(1).

[44] § 2605(e)(1)(B).

[45] § 2605(e)(1)–(2).

department of, the servicer who can provide assistance to the borrower.[46]

The loan servicer's response should also explain or clarify "information requested by the borrower or [explain] why the information requested is unavailable or cannot be obtained by the servicer."[47]

Defendants argue that the pleadings show Homecomings made a proper response to Plaintiffs' QWR, and so Plaintiffs have failed to allege a violation of RESPA.[48] Plaintiffs respond that GMAC had a duty to "properly respond to the RESPA request, to properly explain all of the outrageous charges to the loan account, to produce documentation showing the owner and holder in due course of the note, and to otherwise respond before it conducted an illegal foreclosure sale."[49] Based on the proposed pleadings and their attachments, the Court holds that Plaintiffs have failed to allege with any particularity how the response to their QWR did not comply with RESPA.

As a threshold matter, the proposed amendment fails to identify which requests Homecomings failed to address, how Homecomings failed to address them, and otherwise how Homecomings failed to comply with its obligations under RESPA. The Court finds that such factual allegations are important under the circumstances because Plaintiffs' QWR demanded such a far-ranging scope of materials such as (1) a certified copy of all master pooling and service agreements between GMAC

---

[46] § 2605(e)(2)(B).

[47] § 2605(e)(2)(C).

[48] Neither party clearly addresses what relationship GMAC bears to Homecomings, which Plaintiffs assert is now defunct. The QWR itself refers to GMAC in several instances. Because Defendants do not challenge that GMAC had some duty under RESPA to respond to the QWR or that GMAC was a loan servicer subject to the requirements of RESPA, the Court does not reach these issues here.

[49] Pls.' Reply 8.

and the special purpose vehicle; (2) a certified copy of all recourse agreements between GMAC and any other financial institution as it related to Plaintiffs' account; (3) a certified copy of a the trust agreement between GMAC Bank – Penn. Corp. and any other financial institution as it related to Plaintiffs' account; (4) a certified copy of all previous letters and documents sent to Plaintiffs by other servicers, which might be contained in Homecomings' files; and (5) multiple documents related to public disclosures of securities under SEC rules. Many of these documents appear to be unrelated to the servicing of Plaintiffs' loan. In light of Plaintiffs' significant demand for document production, Plaintiffs must at the very least identify the particulars of how the response to their QWR violated RESPA.[50] The proposed amendment's failure to plead these important facts would make it subject to dismissal and therefore futile.

Putting aside the proposed amended complaint's absence factual support for the RESPA claim, the Court holds that even viewing the proposed pleadings in a light most favorable to Plaintiffs, Defendants satisfied their obligations under the Act based on the responses they did provide. Plaintiffs have attached to their proposed amended complaint their QWR as well as the response provided by Homecomings. Construing the response to the QWR in the light most favorable to Plaintiffs, the Court finds that the response provided some of the information Plaintiffs requested, primarily the account's payment history, and asserted that much of the rest of the information was "subject to business and trade practices which are proprietary and confidential." To the extent that Plaintiffs' base their RESPA claim on Defendants' claim of privilege, the Court holds that Defendants' assertion of the protection for the information did not violate the Act.

---

[50] *Schneider v. SunTrust Mortg., Inc.*, No. 11-344, 2011 WL 2600720, at * 3 (D. Minn. June 30, 2011).

RESPA allows a loan servicer to respond to a QWR by explaining "why the information requested is unavailable or cannot be obtained by the servicer."[51] RESPA does not provide additional recourse for borrowers who wish to challenge the assertion of some protection or privilege as to information withheld from a response to a QWR. For these reasons the Court concludes that the proposed amended complaint has failed to state a claim upon which relief may be granted as to the RESPA claims in Count III.[52] It follows that the proposed amendment would be futile, and Plaintiffs' Motion is **DENIED** as to this issue.

## E. Remaining Claims of the Proposed Amended Complaint

Defendants have not argued the futility of the other claims asserted in the proposed amended complaint, including the claim for wrongful foreclosure in Count II, the claim for slander to title in Count IV, and the conversion claim in Count V. Therefore, the Court declines to consider whether these causes of action would survive a motion to dismiss. Therefore, Plaintiffs' Motion for Leave to File Amended Complaint as to these proposed claims as well as their claims for breach of the Deed of Trust's notice requirement (Count VI) and promissory estoppel (Count VII) is **GRANTED**. With respect to the proposed claims to quiet title and violations of RESPA, Plaintiffs' Motion for Leave to File Amended Complaint is **DENIED**. Because the Motion is granted in part and denied

---

[51] At least one other federal court has reached this same result where a loan servicer responded to a QWR by asserting that the requested information was proprietary or confidential. *Van Egmond v. Wells Fargo Home Mortg.*, No. SACV 12-0012, 2012 WL 1033281, at *5 (C.D. Cal. Mar. 21, 2012).

[52] Defendants also point out that the rescission of a foreclosure sale is not one of the remedies enumerated in RESPA. 12 U.S.C. § 2605(f)(1) (providing actual damages and $1,000 in additional damages in cases involving a pattern or practice of noncompliance as remedies for individuals proving a violation of RESPA). Because the Court holds that Plaintiffs have failed to plead a RESPA claim, the Court need not reach the issue of what relief Plaintiffs might be entitled to recover on the claim.

in part, Plaintiffs are directed to revise their amended complaint to include only the claims specified above. Upon revising the amended complaint to conform to this order, Plaintiffs are directed to file the amended complaint as a separate docket entry. Plaintiffs should file their revised amended complaint within three (3) days of the entry of this order.

## III. Defendants' Motion for Judgment on the Pleadings

It is well-settled that an amended complaint supersedes the original complaint and renders the initial pleading a nullity.[53] Courts in this Circuit and others will deny as moot Rule 12 motions to test the sufficiency of the pleadings after a plaintiff subsequently files an amended complaint.[54] Defendants' Motion for Judgment on the Pleadings is directed at Plaintiffs' original complaint and argues causes of action that are no longer part of the pleadings, including claims for violation of the Fair Debt Collection Practices Act, the Tennessee Consumer Protection Act, and violations of the statutory requirements for foreclosure sales under Tenn. Code Ann. § 35-5-101 *et seq.* Therefore, Defendants' Motion for Judgment on the Pleadings will be **DENIED** as moot and without prejudice to present any and all issues raised in their Motion in a subsequent dispositive motion.

## CONCLUSION

Plaintiffs' Motion for Leave to File Amended Complaint is **GRANTED IN PART, DENIED IN PART**. Plaintiffs are directed to revise their proposed amended complaint consistent with the holdings of this order and to file their revised amended complaint as a separate docket entry

---

[53] *B & H Medical, L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 268 (6th Cir. 2008).

[54] *E.g., Pinks v. Lowe's Home Centers, Inc.*, 83 Fed. Appx. 90 (6th Cir. 2003); *McCloy v. Correction Medical Services*, 2009 WL 190035, *2 (E.D. Mich. 2009); *Williams v. Kelly*, 2007 WL 2951303, *1 (E.D. Mich.2007). *See also Young v. City of Mount Ranier,* 238 F.3d 567, 573 (4th Cir. 2001); *Milton v. Chicago Park Dist.*, 1998 WL 516805, *1 (7th Cir. 1998); *Wiser v. ASI-Agrieserve, Inc.*, 2009 WL 1422060, *1 (W.D. Pa. 2009).

within three (3) days of the entry of this order.  In light of the fact that Plaintiffs are granted leave to file new operative pleadings, Defendants' Motion for Judgment on the Pleadings is **DENIED** as moot and without prejudice to re-file.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: May 7, 2012.